UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JENNIFER DUNCAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:14-CV-1827-G |
| JAMES CHRIS FREEMAN, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's motion to remand and request for attorney's fees (docket entry 11). For the reasons set forth below, the motion to remand is granted, and the request for attorney's fees is denied.

### I. BACKGROUND

#### A. Factual Background

The plaintiff, Jennifer Duncan, is an entrepreneur who was engaged in a business arrangement with James Freeman, Erin Freeman, and Good Vapes, LLC (collectively, "the defendants"). *See* Plaintiff's Original Petition ("Complaint") ¶¶ 2-5, 8, 13-15 (docket entry 1, exhibit A1). The plaintiff seeks damages from the

defendants based on events leading to the demise of their business relationship.  *Id.* ¶¶ 24-75.

The plaintiff approached the defendants about opening a "vape"[1] store together.  *Id.* ¶¶ 12-14.  After discussing the matter, the parties secured an attorney to form a limited liability company ("LLC") and to draft an operating agreement for their co-venture.  *Id.* ¶¶ 13-14.  The plaintiff contributed $50,000 to the account of one location of the prospective business.  *Id.* ¶ 15.  In the following weeks, the parties began to disagree about the terms of their oral agreement and how it was being transcribed.  *Id.* ¶¶ 16-17.  The plaintiff alleges the defendants contacted their own attorney to draft an operating agreement inconsistent with the parties' prior agreement.  *Id.* ¶ 18.  She also avers that the defendants excluded her from the new business by proposing that she "take her investment back and 'go home'" and demanding she cease using the name "Good Vapes."  *Id.* ¶¶ 17, 22.

Good Vapes, LLC ("Good Vapes") -- the LLC formed out of the parties' agreement and an individual defendant in this dispute -- has developed a protectable trademark right in the name "Good Vapes."  Defendants' Counter-Complaint ¶ 16 (docket entry 20).  Good Vapes also owns the exclusive rights to the Good Vapes'

---

[1] Vaporizers, "vapes," are a larger, customizable, version of an e-cigarette that is sold in specialty shops and produces a flavored vapor cloud.  *See* Mike Esterl, *'Vaporizers' Are the New Draw in E-Cigarettes*, THE WALL STREET JOURNAL, May 29, 2014, http://online.wsj.com/articles/vaporizers-are-the-new-draw-in-e-cigarettes-1401378596.

logo, the copyright of which has been registered with the United States Copyright Office. *Id.* ¶ 19. Goods Vapes holds U.S. trademark application number 86280161 (the "trademark") and U.S. copyright numbers 1572184781 and 1569769901 (collectively the "copyrights"). *Id.* ¶ 6.

The plaintiff stated nine causes of action in her complaint: (1) breach of contract; (2) money had and received; (3) conversion; (4) fraud; (5) fraud by nondisclosure; (6) civil conspiracy; (7) breach of fiduciary duty; (8) attorney's fees; and (9) an accounting. Complaint ¶¶ 24-74.

B.  Procedural Background

On April 18, 2014, the plaintiff filed this suit in the 44th Judicial District Court of Dallas County, Texas. *Id.* at 1. Subsequently, the defendants removed the case to this court under the provisions of 28 U.S.C. § 1441. Defendants' Notice of Removal ¶ 4 (docket entry 1). The defendants contend that the complaint presents claims "arising under" federal law. *Id.* Also, the defendants argue that the case should remain in federal court because their counterclaims expressly rely on federal law. *See* Brief in Support of Defendants' Response to Plaintiff's Motion to Remand ("Brief in Response") ¶ 11 (docket entry 19). The plaintiff filed the instant motion to remand the case, arguing that her complaint does not raise any issues "arising under" federal law. *See* Brief in Support of Plaintiff's Motion to Remand ("Brief to

Remand") ¶ 1 (docket entry 12).  The court now turns to the disposition of these issues.

## II. ANALYSIS

### A. Removal Under 28 U.S.C. § 1441

As a matter of right, defendants can remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441.  Diversity jurisdiction is absent in this case.  *See* Complaint ¶¶ 2-5.  However, the defendants submit multiple arguments that the court has original jurisdiction based on the presence of a federal question.  *See* 28 U.S.C. §§ 1331 and 1338.

### B. Federal Question Jurisdiction Under 28 U.S.C. § 1338

District courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338.  The "arising under" phrase used in §1338 and 28 U.S.C. §1331 -- the statute conferring general federal question jurisdiction -- possess identical meanings. *Gunn v. Minton*, __ U.S. __, 133 S. Ct. 1059, 1064 (2013).  This dispute requires the court to determine when a state law claim "arises under" federal law.

1.  *State Law Causes of Action "Arising Under" Federal Law*

To determine whether any claim "arises under" federal law the court must examine the "well pleaded" allegations of the complaint.  See *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003).  It is now axiomatic that a plaintiff is "master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available." *Bernhard v. Whitney National Bank*, 523 F.3d 546, 551 (5th Cir. 2008) (citing *Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 784 (5th Cir.), *modified in part on rehearing*, 207 F.3d 225 (5th Cir.) [, *cert. denied*, 531 U.S. 956 (2000)]).  However, a plaintiff cannot avoid federal jurisdiction "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 9 (1983) (citing *Smith v. Kansas City Title & Trust Company*, 255 U.S. 180 (1921); *Hopkins v. Walker*, 244 U.S. 486 (1917)).

In *T.B. Harms Company v. Eliscu*, Judge Friendly provided one of the clearest explanations of when statutory "arising under" jurisdiction exists.  339 F.2d 823 (2d. Cir. 1964), *cert. denied*, 381 U.S. 915 (1965).  Judge Friendly noted that "arising under" jurisdiction exists in two situations:  (1) when "the complaint is for a remedy expressly granted" by the relevant federal statute; and (2) when a party "asserts a [state] claim requiring construction" of a federal statute. *Id.* at 828. The first of these

situations is easy to identify and not applicable in this case. With respect to the second, construing federal law requires more than the "mere need to apply federal law in a state-law claim . . .." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313 (2005).[2]

In 2005, the Supreme Court created a single, albeit multifactor, question courts should ask to determine if a state law claim "arises under" federal law: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" *Grable*, 545 U.S. at 314. Broken apart, this question reveals that a state law claim "arises under" federal law when: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314).

For example, in *Singh*, the plaintiff's legal malpractice claim failed prongs (3) and (4) of the *Grable* test. *Id.* at 338-40. The legal malpractice claim stemming from negligent work of a trademark attorney did not present a substantial federal

---

[2] The Supreme Court has consistently held that §§ 1331 and 1338 confer jurisdiction narrower than that permitted by Article III of the Constitution. See *Grable*, 545 U.S. at 320 (Thomas, J., concurring).

question. *Id*. at 339 ("Federal trademark law not only provides no remedy for aggrieved clients to recover against negligent trademark attorneys but also has an object entirely different from that of state malpractice law."); see also *Goodman v. Lee*, 815 F.2d 1030, 1031-32 (5th Cir. 1987) (concluding "arising under" jurisdiction exists because plaintiff's claim of copyright ownership required analyzing 17 U.S.C. § 201 which provides that copyrights vest "initially in the author or authors of the work"); *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182-83 (4th Cir. 2014) (foreclosure of equitable lien on trademark did not raise any federal question); *Baghdassarian v. Baghdassarian*, 552 F. App'x 702, 703 (9th Cir. 2014) ("The mere fact that the underlying facts of the case involve trademark infringement does not confer federal question jurisdiction over this contract dispute."); *Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46-48 (2d Cir. 2002) (finding federal jurisdiction because the dispute required interpreting 17 U.S.C. § 204 -- the section of the copyright act requiring that transfers of copyrights be in writing). Furthermore, authorizing federal jurisdiction over state legal malpractice claims would "upend the balance between federal and state judicial responsibilities." *Singh*, 538 F.3d at 339.

Because almost any case "involving contract interpretation, appropriate for state court determination, could be recharacterized as a case appropriate for a federal court," courts must apply the *Grable* test strictly. *Jasper*, 314 F.3d at 47. Whenever a federally created property interest is under dispute, parties can easily recharacterize

almost any state law claim as a claim supposedly "deserving" federal jurisdiction. Thus, before allowing a state law claim in federal court, a court must identify a *substantial* federal issue presented by the claim.³ *Grable*, 545 U.S. at 314. Otherwise, the federal docket will be flooded with state law claims that only tangentially concern federal law.

2. *Preemption*

The doctrine of complete preemption is an independent corollary to the "well-pleaded complaint" rule. See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). According to the Fifth Circuit, when "Congress has completely preempted a given area of state law, [t]his 'complete preemption' exception permits recharacterization of the plaintiff's state-law claim to a federal claim . . .." *Bruneau v. Federal Deposit Insurance Corporation*, 981 F.2d 175, 179 (5th Cir. 1992) (quoting *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989), *cert. denied*, 498 U.S. 1011 (1990)), *cert. denied*, 508 U.S. 939 (1993). Essentially, complete preemption transforms what was a state law claim into a claim under federal law.

a. Preemption in Copyright Cases

With few exceptions, all state causes of action falling within the scope of the Copyright Act are expressly preempted. *See* 17 U.S.C. § 301 ("[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of

---

³ This sentence assumes the absence of diversity jurisdiction. *See* 28 U.S.C. § 1332.

copyright . . . are governed exclusively by this title."). The Fifth Circuit has interpreted this statutory language as *completely* preempting the substantive field. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012).

The act itself provides a two-part test to determine whether a state cause of action falls within its preemptive scope. First, the work at issue must come within the subject matter of copyright, as defined by 17 U.S.C. §§ 102 and 103. See *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 785-86 (5th Cir. 1999). Second, the right that the author seeks to protect must be equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106. See *id.*

Regarding the first prong, the Copyright Act expressly states the subject matter it encompasses.[4] The core of a party's state law theory of recovery must "center on . . . an interest clearly protected by the Copyright Act." *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (holding state law claims regarding defendants' use of copyright materials were preempted). The second prong requires "a comparison of the nature of the rights protected under federal copyright law with the nature of the state rights" the plaintiff seeks to enforce. *Alcatel*, 166 F.3d at 787. If "one or more qualitatively different elements are required to constitute the state-created cause of

---

[4] 17 U.S.C. § 102 (stating that the act covers the following works of authorship: "(1)literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works.").

action being asserted, then the right granted under state law does not lie 'within the general scope of copyright' and preemption does not occur." *Id.* (quoting 1 NIMMER ON COPYRIGHT § 1.01[B][1], at 1-13).  In other words, state claims will not be preempted if they are "different in kind from the copyright infringement." *Alcatel*, 166 F.3d at 789 (holding plaintiff's misappropriation claim was preempted because it had no element protecting a different right than those protected by the Copyright Act).  For example, breach of contract claims typically are not preempted by the Copyright Act, even if a copyright is the subject of the contract, because contract claims protect an additional element -- the contract promise.  See *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Pick v. Pikoff*, No. Civ. A. 3:04-CV-0170-B, 2004 WL 2997480, at *2 (N.D. Tex. Dec. 27, 2004) (Boyle, J).

b.  Preemption in Trademark Cases

Federal trademark law, as codified in the Lanham Act, does not explicitly preempt all state laws concerning trademarks.  *See* 15 U.S.C. § 1127 (stating that "[t]he intent of this [Act] is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation . . .").  Nor have courts construed the Lanham Act as preempting the entire field of trademarks.  See *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 919 (7th Cir. 2007) ("In the area of trademark law, preemption is the exception

rather than the rule."); 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 22:2 (4th ed.) (discussing the coexistence of state and federal law in the realm of trademarks). Therefore, state law is not preempted by the Lanham Act unless the two are in direct conflict. 15 U.S.C. § 1127 (stating the act is meant to "protect registered marks used in such commerce from *interference* by State, or territorial legislation . . ..") (emphasis added); *see also* U.S. CONST. art. VI, cl. 2 (Supremacy Clause); *Kewanee Oil Company v. Bicron Corp.*, 416 U.S. 470, 479 (1974) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) ("The question of whether the trade secret law of Ohio is void under the Supremacy Clause involves a consideration of whether that law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'").

C. Application of Law to the Present Dispute

The defendants contend that federal subject matter jurisdiction exists in this case for three reasons: (1) their defenses and counterclaims expressly arise under federal law; (2) the plaintiff's state law claims require the construction of federal law;[5]

---

[5] In particular, the defendants argue the plaintiff's state law claims raise many federal questions, including: "(1) the nature and scope of a United States trademark, (2) the assignment and license of a United States trademark, (3) the enforceability and validity of a United States trademark, . . .(4) Plaintiff's rights and ownership in Defendants' United States copyrights, (5) the nature and scope of Defendants' United States copyrights, (6) the construction and interpretation of federal copyright law restricting verbal transfers of ownership, (7) the construction and interpretation of federal copyright law regarding copyright representations and
(continued...)

and (3) the plaintiff's state law claims are preempted.

First, federal question jurisdiction must be established "unaided by anything … the defendant may interpose." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 276 (5th Cir. 2011) (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809 (1988)). Thus, the defendants' defenses and counterclaims are irrelevant.

Second, the plaintiff's state law claims fail to present any "substantial federal issues" and granting federal jurisdiction over such claims would "disturb the balance of federal and state judicial responsibilities."[6] *Singh*, 538 F.3d at 338 (citing *Grable*, 545 U.S. at 314). With respect to copyright law, a state court might need to analyze 17 U.S.C. § 204, which requires a transfer of copyright ownership to be in writing and signed. However, any application of § 204 would be rote -- there would be no "major questions of construction." See *T. B. Harms Company*, 339 F.2d at 827-28 (citing *De Sylva v. Ballentine*, 351 U.S. 570 (1956)). There is no apparent dispute over what constitutes a "writing"; rather, the court would only need to determine if a

---

[5](...continued)
disclosures, and (8) the construction and interpretation of federal copyright law on the validity and termination of Defendants' copyrights." Brief in Support of Defendants' Response to Plaintiff's Motion to Remand ¶¶ 2, 7 (docket entry 19).

[6] The court's conclusion makes analysis of prongs (1) and (2) of the *Grable* test unnecessary. As a reminder, a state law claim "arises under" federal law when: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh*, 538 F.3d at 338 (citing *Grable*, 545 U.S. at 313).

writing exists. Likewise, any trademark issue does not present a substantial federal question. The Lanham Act allows for the assignment of trademarks. 15 U.S.C. § 1060. As with the copyright issue, a court will -- at most -- have to apply the requirement that any trademark assignment be in writing. See *id*. Determining whether a writing exists in this case is not a substantial federal issue. State contract or limited liability company law, not the text of the Copyright Act or Lanham Act, will ultimately provide answers to the plaintiff's state law claims.

Granting federal jurisdiction over the plaintiff's state law claims would also severely disrupt the balance between the state and federal judiciary. If federal question jurisdiction existed over any claim concerning the ownership of a copyright or trademark, the federal docket would be flooded with cases presenting insubstantial questions of federal law.

Third, the plaintiff's claims are not preempted because they do not center on an interest clearly protected by the Copyright Act, nor do her claims conflict with the Lanham Act. The Copyright Act and Lanham Act create property interests in intellectual and creative works. The plaintiff's claims presuppose the existence of those property rights and neither supplant, nor conflict with, those rights. Instead, the plaintiff's claims add elements to those rights. For example, the plaintiff's breach of contract claim adds the element of a bargained for promise, which is absent from both statutes and is the essence of this claim. To reach a different result would

effectively preempt any and all claims arising from a transaction premised on a party's ownership of a copyright or trademark.

### D. Attorney's Fees

In this case, the plaintiff seeks attorney's fees and costs as a result of the defendants' removal. *See* Motion to Remand ¶ 1. Federal law provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Fifth Circuit Court of Appeals has stated that "courts may award attorney's fees when the removing party lacks an objectively reasonable basis for removal." *Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir.), *cert. denied*, __ U.S. __, 131 S. Ct. 595 (2010). Thus, the court has "considerable discretion" in determining whether to award attorneys' fees for improper removal. *Id.* at 458. Because the defendants had objectively reasonable grounds for seeking removal, the plaintiff's request for attorney's fees is denied.

### III. CONCLUSION

For the reasons stated above, the plaintiff's motion to remand is **GRANTED**, while her request for attorney's fees is **DENIED**. This case is **REMANDED** to the **44th Judicial District Court of Dallas County, Texas**. The clerk shall mail a certified copy of this memorandum opinion and order to the district clerk of Dallas County, Texas. 28 U.S.C. § 1447(c).

**SO ORDERED**.

October 15, 2014.

_____
**A. JOE FISH**
**Senior United States District Judge**